UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ANTHONY ROYAL,

Plaintiff,

v. 1:17-CV-1251 (GTS/CFH)

ROBERT WILKE, Secretary of Veteran Affairs,

Defendant.

---

APPEARANCES: OF COUNSEL:

ANTHONY ROYAL
*Pro Se* Plaintiff
99 Lake Drive
Newburgh, NY 12550

HON. ANTOINETTE T. BACON
United States Attorney for the N.D.N.Y.
Counsel for Defendant
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207-2924

KAREN FOLSTER LESPERANCE, ESQ.
Assistant U.S. Attorney

GLENN T. SUDDABY, Chief United States District Judge

**DECISION and ORDER**

Currently before the Court, in this employment discrimination and retaliation action filed by Anthony Royal ("Plaintiff") against Secretary of Veteran Affairs Robert Wilke ("Defendant"), is Defendant's motion for summary judgment. (Dkt. No. 59.) For the reasons set forth below, Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff alleges discrimination by his employer based on his race or color, and retaliation based on his complaint of that discrimination, in

violation of Title VII of the Civil Rights Act of 1964. (Dkt. No. 11 [Pl.'s Am. Compl.].) More specifically, Plaintiff alleges that he was unlawfully retaliated against because his employment was terminated after he complained to an Equal Employment Opportunity ("EEO") officer about the way he was treated in the workplace. (*Id.* at 3.)

In an appended affidavit, Plaintiff alleges the following relevant facts: (a) he is African-American; (b) he has been diagnosed with posttraumatic stress disorder ("PTSD") and depression, and suffered a workplace injury of his back while employed during the relevant time; (c) after being transferred to a position as a Medical Support Assistant ("MSA"), he was harassed by a coworker, who made fun of the way he spoke and would engage in "racially offensive conversations with other co-workers" while Plaintiff was present, including about his admiration for Germany, how he wished he could have lived in Germany when Adolf Hitler was in charge, how much he enjoyed the book *Mein Kampf*, and about white supremacy; (d) this harassment caused him to suffer an anxiety attack in early June 2015 that required him to call a mental health crisis hotline and go to the emergency room for medical care; (e) eight days after returning to work after that incident, a chair he was sitting in collapsed, resulting in the need for medical care for back pain and further absences from work; (f) on July 22, 2015, he informed the employee health nurse that he was still unable to work due to back pain, but was merely told to return to work; (g) after this meeting with the employee health nurse, he called the EEO officer for his workplace and reported that he felt he was being discriminated against because of his race and his mental illness; (h) Plaintiff continued to be unable to report to work, but his supervisor Ms. Heinmiller would not accept his information regarding his condition for the purposes of applying paid leave to his absences; and (i) on August 21, 2015, he received a letter that

terminated his employment effective that date due to "unacceptable performance, conduct, and attendance." (*Id.* at 6-13.)

Based on these factual allegations, Plaintiff has asserted two claims: (1) a claim of discrimination based on racially harassing conduct by a coworker and termination of his employment, and (2) a claim of retaliation for making a complaint about that harassment and other discriminatory workplace conduct.

**B. Undisputed Material Facts on Defendant's Motion for Summary Judgment**

Under N.D.N.Y. Local Rule 56.1 (formerly Local Rule 7.1[a][3]), a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises." L.R. 56.1(b). Here, Plaintiff provided denials of some of Defendant's asserted facts, but provided no indication of his response to other asserted facts. (Dkt. No. 63, at 3-6 [Pl.'s Rule 56.1 Resp.].) Because Plaintiff specifically denied certain facts and not others, the Court deems that all facts not denied or challenged have been admitted. *See* L.R. 56.1(b) ("The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."). The Court also notes that Plaintiff has not provided citations to the record related to his denials as required by the Local Rules. However, out of special solicitude to Plaintiff due to his *pro se* status and the clear indication that he has made efforts to comply with the requirements, the Court will consider whether any of those denials are supported by Plaintiff's affidavit that was appended to the Amended Complaint (and which has also been submitted as evidence by Defendant with his motion) or other submitted evidence.

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in his Statement of Material Facts and either admitted by Plaintiff (expressly or by virtue of his failure to deny the fact) or denied without appropriate evidentiary support. (*Compare* Dkt. No. 59, Attach. 3 [Def.'s Rule 56.1 Statement] *with* Dkt. No. 63 [Pl.'s Rule 56.1 Resp.].)

1. Plaintiff is an African-American male and a service-disabled veteran.

2. Plaintiff had previously been employed by Loyola Recovery Services ("Loyola"), but became unemployed when that program closed as of December 31, 2014.[1]

3. In January 2015, Plaintiff started work as a VA employee, working in a food service position in the cafeteria at Samuel S. Stratton Veterans Affairs Medical Center ("Albany VAMC").

4. He continued to look for another position within the VA, however, and periodically stopped by the Behavioral Veterans Affairs Health Care Line ("BVAC") unit to inquire whether there were any open positions.

5. In early 2015, a position as a Medical Support Assistant ("MSA") in the BVAC unit became available, and Plaintiff applied for it.

6. Deborah Heinmiller is the Supervisory Program Specialist in the BVAC unit, and was responsible for the hiring and supervision of MSAs in that unit.

7. Human Resources provided Ms. Heinmiller with a list of candidates who were

[1] The evidence to which Defendant cites as support for asserted facts numbered three and four are not supported by the cited evidence, because Defendant does not appear to have included the cited pages from Plaintiff's deposition in the submission with his motion. However, some of these asserted facts are supported by the declaration of Deborah Heinmiller. (Dkt. No. 59, Attach. 4, at ¶3 [Heinmiller Decl.].) The Court has therefore revised these facts to reflect what is supported by the provided evidence.

both qualified for the open MSA position and had a veteran's preference.

8. Plaintiff and two other candidates were on the list. Ms. Heinmiller was familiar with all three of the candidates on that list because she had previously interviewed the other two candidates for past vacancies, and she knew Plaintiff from his employment with Loyola.

9. Ms. Heinmiller spoke with Plaintiff's previous supervisor at Loyola, who provided a positive reference.

10. Ms. Heinmiller elected not to conduct interviews, and instead offered Plaintiff the MSA position.

11. Plaintiff commenced employment as an MSA with the BVAC unit on March 8, 2015, which employment was subject to a one-year probationary period.

12. MSAs are responsible for scheduling appointments, checking patients in and out of the clinic, and fielding telephone calls in a very busy mental health clinic.

13. For the first several weeks of Plaintiff's employment, Ms. Heinmiller sat with him every day to teach and train him how to perform the necessary tasks required for the position.[2]

14. Ms. Heinmiller also provided Plaintiff with a binder that contained a "cheat sheet" for each task he was expected to perform, and encouraged him to ask her or other MSAs if he had any questions or problems.

15. However, Plaintiff made frequent mistakes, particularly with patient scheduling.

---

[2] Plaintiff denies this asserted fact, arguing that he was trained by another MSA, Shannon Gorman, who trained him incorrectly. (Dkt. No. 63, at 3 [Pl.'s Rule 56.1 Resp.].) However, Plaintiff cites no evidence to support this denial, and his affidavit does not contradict the asserted fact. (Dkt. No. 11 [Pl.'s Aff.].) This asserted fact is therefore deemed admitted.

16. Ms. Heinmiller would explain the mistakes to him, explain why they were not correct, and review how to complete the tasks correctly.

17. However, Plaintiff continued to make the same mistakes after these instructions, and some concerns also arose over how Plaintiff interacted with patients on the telephone.[3]

18. Ms. Heinmiller gave Plaintiff additional training on how to interact with patients, and provided him with scripts he could use when speaking to patients; he did not, however, use those scripts.

19. After correcting Plaintiff multiple times regarding the same mistakes, Ms. Heinmiller began to make a record of her concerns with his performance.

20. The first time Ms. Heinmiller documented such a concern was May 22, 2015. On that day, she met with Plaintiff to go over some errors he was making when scheduling patients.

21. Ms. Heinmiller explained what he had done incorrectly and what he should have done. She also asked him if there was anything she could do to help him perform his job more successfully, but he declined additional help.

22. Ms. Heinmiller documented this meeting in a VA "Report of Contact" form, and attached a print-out of the incorrect scheduling to that Report.

23. On May 27, 2015, Ms. Heinmiller met with Plaintiff again.

24. Plaintiff was continuing to make scheduling errors, such as scheduling for the

---

[3] Plaintiff denies this asserted fact, arguing Ms. Heinmiller never told him that there were problems with how he interacted on the phone, but rather that another MSA made racist comments about the way he spoke on the phone. (Dkt. No. 63, at ¶ 20 [Pl.'s Rule 56.1 Resp.].) However, Plaintiff cites no evidence to support this denial, and his affidavit does not contradict the asserted fact. (Dkt. No. 11 [Pl.'s Aff.].) This asserted fact is therefore deemed admitted.

wrong clinic, wrong date, wrong time, or wrong patient.[4]

25. Ms. Heinmiller went over each instance in which he had made a scheduling error and explained what was incorrect. She also again asked whether there was anything she could do to help him be more successful, but he again declined.

26. Ms. Heinmiller documented this conversation in another Report of Contact.

27. On or about May 28, 2015, Plaintiff did not report to work and did not call to notify anyone at the BVAC that he would not be in.[5]

28. Ms. Heinmiller recorded this time as absent without leave ("AWOL").

29. The next workday, Plaintiff met with Ms. Heinmiller, Behavioral Health Program Manager Paul Postiglione, and personnel health nurse practitioner Susan Burkhart.

30. In this meeting, Plaintiff was visibly upset and reported that he was experiencing a mental health crisis as a result of his PTSD and that he needed help.

31. Plaintiff indicated that he did not want to be seen by a provider at Albany VAMC because he did not want to seek care where he worked.

32. Mr. Postiglione asked Plaintiff whether his PTSD was combat-related or non-

---

[4] Plaintiff denies this asserted fact, arguing that Ms. Heinmiller inaccurately assumed he was making mistakes and, on one unspecified occasion, she accused Plaintiff of overbooking a doctor when she herself had made the mistake of overbooking. (Dkt. No. 63, at ¶ 29 [Pl.'s Rule 56.1 Resp.].) However, Plaintiff cites no evidence to support this denial, and his affidavit does not contradict the asserted fact. (Dkt. No. 11 [Pl.'s Aff.].) This asserted fact is therefore deemed admitted.

[5] Plaintiff does not deny that he both failed to report to work that day or that he failed to call anyone at the BVAC about his absence that day; rather, he adds facts about having called the crisis hotline and speaking to a Dr. Lombardi, who instructed him to go to the emergency room at the Albany VAMC after 5pm so that he would not have to see his coworkers while seeking medical attention. (Dkt. No. 63, at ¶ 33 [Pl.'s Rule 56.1 Resp.].) Plaintiff's affidavit appears to dispute that he was absent for two days without contacting his employer, and asserts that he had a meeting that included Ms. Heinmiller "[t]he next day." (Dkt. No. 11, at ¶¶ 9-10 [Pl.'s Aff.].) As a result, the Court has generally adopted Defendant's asserted fact, but has omitted his assertion that Plaintiff was absent without contact on May 28, and May 29, 2015.

combat-related, because the VA operates the Albany Vet Center, which treats veterans with combat-related PTSD.

33. Plaintiff indicated that his PTSD was not combat-related, but Mr. Postiglione called the Albany Vet Center anyway and asked whether they would be willing to see Plaintiff given the circumstances.

34. The Albany Vet Center agreed to see Plaintiff and an appointment was scheduled for the following day.

35. Plaintiff left for the rest of the day and agreed that he would contact Ms. Heinmiller with an update after his appointment the next day.

36. During this meeting, Plaintiff also provided documentation that he had been seen at the Albany VAMC Emergency Department for treatment of symptoms associated with his PTSD on May 28, 2015, and he was medically excused from work through June 1, 2015.

37. Based on this documentation, Ms. Heinmiller changed the AWOL designation to sick leave for the days Plaintiff had been absent.

38. Ms. Heinmiller informed Plaintiff that it was important that he communicate with her if he was unable to come to work.

39. Ms. Heinmiller reviewed the process for requesting leave with him, asked him to repeat it back to her to make sure that he understood, and also wrote the process down for him.[6]

40. Ms. Heinmiller documented this discussion in a Report of Contact, as did Mr. Postiglione.

---

[6] Plaintiff denies this asserted fact, stating that he does not recall Ms. Heinmiller asking him to repeat the information back or that she wrote anything down for him. (Dkt. No. 63, at ¶ 45 [Pl.'s Rule 56.1 Resp.].) However, setting aside the point of law that failing to recall a fact cannot constitute a dispute of that fact for purposes of a motion for summary judgment, Plaintiff cites no evidence to support this denial, and his affidavit does not contradict the asserted fact. (Dkt. No. 11 [Pl.'s Aff.].) This asserted fact is therefore deemed admitted.

41. Plaintiff had indicated that many of the mistakes he had been making at work were due to the exacerbation of his PTSD, so Ms. Heinmiller provided him with the VA's Reasonable Accommodation handbook and the paperwork to request a reasonable accommodation if he needed one.[7] Ms. Heinmiller amended the Report of Contact from May 27, 2015, to reflect Plaintiff's reports about his PTSD.

42. Plaintiff never requested a reasonable accommodation.

43. Plaintiff did not contact Ms. Heinmiller after his appointment with the Albany Vet Center and did not report to work for the remainder of the week.[8]

44. On June 4, 2015, Ms. Heinmiller called Plaintiff because she had not heard from him and he had been no call/no show to work each day. She left Plaintiff a message, informing him that he was currently AWOL and would remain in that status until she heard from him. She also reminded him that she required a doctor's note if he was going to be out of work for an extended period of time.

45. Plaintiff returned Ms. Heinmiller's call and indicated that he would be out of work until June 8, 2015.

46. Ms. Heinmiller reminded him that he was supposed to have called her earlier in the week and informed him that she would need documentation for his medical absence.

---

[7] Plaintiff denies this asserted fact, stating that he never told Ms. Heinmiller that he made mistakes because of his PTSD. (Dkt. No. 63, at ¶ 47 [Pl.'s Rule 56.1 Resp.].) However, Plaintiff cites no evidence to support this denial, and his affidavit does not contradict the asserted fact. (Dkt. No. 11 [Pl.'s Aff.].) This asserted fact is therefore deemed admitted.

[8] Plaintiff states in his response that Ms. Heinmiller was aware of his need to be absent because the Albany Vet Center sent her notes informing her of his absence. However, Plaintiff does not adduce evidence that Ms. Heinmiller received and reviewed the notes, and he does not deny that he personally failed to contact Ms. Heinmiller. (Dkt. No. 63, at ¶ 51 [Pl.'s Rule 56.1 Resp.].) This fact is therefore deemed admitted.

47. Ms. Heinmiller again reviewed the policy and procedures for calling out if he was going to be absent from work.

48. On June 5, 2015, Plaintiff provided a note from the Albany Vet Center from the same date that indicated he had been seen that day and that his absence from work the week of June 1 to June 5 was medically warranted.

49. After receiving that note, Ms. Heinmiller changed Plaintiff's status from AWOL to sick and/or annual leave. She informed him that any future no call/no show days would be charged as AWOL.

50. On June 17, 2015, Shannon Gorman, another MSA, informed Ms. Heinmiller of an incident in which Plaintiff asked her how to mark a patient as a "no show."

51. Plaintiff had been trained on this previously, but Ms. Gorman again explained to him how to do so. In the course of her explanation, Ms. Gorman realized that the patient in question was currently an inpatient at Albany VAMC, and she told Plaintiff that the patient should not be marked as a no-show, but rather the appointment should be cancelled because the patient was hospitalized.

52. Plaintiff argued with Ms. Gorman and refused to follow her instructions, marking the patient as a no-show.[9]

53. Ms. Heinmiller instructed Ms. Gorman to document the interaction, which she did.

---

[9] Plaintiff does not deny that he asked Ms. Gorman for assistance, but rather asserts that the answer she gave him was wrong. (Dkt. No. 63, at ¶ 59 [Pl.'s Rule 56.1 Resp.].) However, Plaintiff cites no evidence to support this additional assertion (or any denial of the asserted fact), and his affidavit does not contradict the asserted fact. (Dkt. No. 11 [Pl.'s Aff.].) This asserted fact is therefore deemed admitted.

54. On July 15, 2015, Plaintiff did not appear for work.

55. He made a brief call to another MSA to say that he was sick and would not be in that day, despite the fact that he had recently been reminded that he needed to call Ms. Heinmiller to let her know how long he was going to be out and what type of leave he was using if he needed to be absent from work.[10]

56. The next day, on July 16, 2015, Plaintiff reported for work. While at work, Plaintiff claims that his pneumatic desk chair broke, collapsing hard in a manner that caused pain.[11]

57. Plaintiff went to the personnel health clinic and the nurse practitioner sent him home for the rest of the day.[12]

58. The next morning, Plaintiff went to the Emergency Room at Albany Medical Center complaining of continued back pain.

59. X-rays and a CT-scan were performed and showed normal findings other than degenerative changes in his spine.

60. Plaintiff was provided with a note from Albany Medical Center that excused him from work between July 17 and July 20, with a return-to-work date of July 20, 2015.

---

[10] Plaintiff denies this asserted fact, arguing that he called before his shift began and told the MSA who answered the phone that he would not be in that day, which is what all the MSAs did if Ms. Heinmiller was not available. (Dkt. No. 63, at ¶ 63 [Pl.'s Rule 56.1 Resp.].) However, Plaintiff does not deny that he did not speak with Ms. Heinmiller at that time or that he failed to provide the relevant information. Nor does his affidavit address this incident. (Dkt. No. 11 [Pl.'s Aff.].) This asserted fact is therefore deemed admitted.

[11] The Court has altered the asserted fact to more closely accord with the substance of the evidence cited by Defendant. Plaintiff's response to this asserted fact merely adds additional facts, but does not deny the asserted fact itself, which is supported by the cited evidence, including Plaintiff's own affidavit and deposition testimony. (Dkt. No. 63, at ¶ 64 [Pl.'s Rule 56.1 Resp.].) This fact is therefore deemed admitted.

[12] Again, Plaintiff does not deny the asserted fact but merely adds additional facts. (Dkt. No. 63, at ¶ 65 [Pl.'s Rule 56.1 Resp.].) This fact is therefore deemed admitted.

61. On July 20, 2015, Plaintiff went to the Emergency Department at the Albany VAMC complaining of continued back pain.[13]

62. He was excused from work for an additional two days, with a return-to-work date of July 22, 2015.

63. Plaintiff did not call Ms. Heinmiller before going to the Emergency Department, nor did he inform her that he had been excused for an additional two days. Plaintiff went to the worker's compensation office and the personnel health office at Albany VAMC after leaving the Emergency Department, but did not go to the BVAC to update his supervisor. Ms. Heinmiller did not know where Plaintiff was until approximately noon that day, when she was contacted by the worker's compensation office.[14]

64. Plaintiff returned to the VAMC Emergency Department on July 22, 2015. The doctor at the VAMC Emergency Department referred him back to the personnel health office. According to Plaintiff, the personnel health nurse told him that he would need to return to work or request leave time.[15]

65. After Plaintiff left the personnel nurse's office, he immediately called the EEO officer from the first floor lobby of the hospital.[16]

---

[13] Plaintiff's response to this asserted fact is non-responsive and simply adds unrelated facts that do not undermine the asserted fact. (Dkt. No. 63, at ¶ 69 [Pl.'s Rule 56.1 Resp.].) This asserted fact is therefore deemed admitted.

[14] Plaintiff again adds facts tangential to the asserted fact, but does not deny the asserted fact. (Dkt. No. 63, at ¶ 71 [Pl.'s Rule 56.1 Resp.].) This asserted fact is therefore deemed admitted.

[15] Plaintiff again adds facts tangential to the asserted fact, but does not deny the asserted fact. (Dkt. No. 63, at ¶ 72 [Pl.'s Rule 56.1 Resp.].) This asserted fact, in a slightly amended form that is more consistent with the cited evidence, is therefore deemed admitted.

[16] Plaintiff again adds facts tangential to the asserted fact, but does not deny the asserted fact. (Dkt. No. 63, at ¶ 75 [Pl.'s Rule 56.1 Resp.].) This asserted fact, in a slightly amended form that is more consistent with the cited evidence, is therefore deemed admitted.

66. The EEO officer said that he would attempt to schedule a mediation.[17]

67. Plaintiff did not go to his workplace while he was at Albany VAMC on July 22, 2015, and did not otherwise communicate with Ms. Heinmiller. Ms. Heinmiller was aware that he had been medically cleared to return to work on July 22, but he did not show or call. Ms. Heinmiller thus marked him AWOL for that day.

68. At this point, based on Plaintiff's excessive absences, failure to follow leave protocols, the difficulties she had with training him, and his unsatisfactory performance, Ms. Heinmiller decided to submit a recommendation to Human Resources that Plaintiff's probationary employment be terminated.[18]

69. Ms. Heinmiller compiled an evidence file containing all of the documentation regarding Plaintiff's performance and attendance issues, and she completed a "Douglas Factors Checklist," which was required to be included with the recommendation.[19]

70. Ms. Heinmiller's supervisor, Glenn Gilbert, signed off on the Douglas Factors Checklist the same day, and Ms. Heinmiller provided the evidence file to Human Resources.

71. Ms. Heinmiller was unaware at that time, or at any time before Plaintiff's termination, that Plaintiff had contacted the EEO office or made any complaint of discrimination.

72. Plaintiff was no call/no show on July 23, 2015.

73. On July 24, 2015, Plaintiff left a voicemail for Ms. Heinmiller stating that he had

---

[17] Plaintiff again adds facts tangential to the asserted fact, but does not deny that fact. (Dkt. No. 63, at ¶ 76 [Pl.'s Rule 56.1 Resp.].) This asserted fact is therefore deemed admitted.

[18] Plaintiff's response to this asserted fact is non-responsive to the asserted fact itself. (Dkt. No. 63, at ¶ 78 [Pl.'s Rule 56.1 Resp..].) This asserted fact is therefore deemed admitted.

[19] Plaintiff's response to this asserted fact is non-responsive to the asserted fact itself. (Dkt. No. 63, at ¶ 78 [Pl.'s Rule 56.1 Resp..].) This asserted fact is therefore deemed admitted.

a doctor's appointment scheduled for August 5, 2015, but he did not provide any other information, such as what type of leave he was using, and he did not provide any medical documentation related to his continued absence.

74. Plaintiff continued to be absent at work without providing any medical documentation until August 5, 2015; although he left voicemails on July 27, July 31, August 3, and August 4, he was not following leave procedures because he failed to indicate what type of leave he was requesting and failed to leave a contact number.[20]

75. On August 5, 2015, Plaintiff provided a note from an orthopedist, indicating that he had been seen that day and was to be out of work pending an MRI. The note did not state a diagnosis, prognosis, or anticipated return-to-work date, and also did not indicate when the MRI was to be performed.

76. Ms. Heinmiller called Plaintiff and explained the deficiencies in the medical documentation.[21]

77. Plaintiff indicated that he would be speaking to an attorney and hung up the phone.[22]

78. Ms. Heinmiller had several more conversations with Plaintiff regarding his lack of

---

[20] Plaintiff is correct that the cited evidence reflects that he called Ms. Heinmiller on certain dates during the period he was absent. As a result, the Court has amended the asserted fact to reflect the extent of Plaintiff's contact with Ms. Heinmiller during this time, as substantiated by the evidence relied on by Defendant. However, Plaintiff does not deny that he failed to submit medical evidence until August 5, 2015, and the asserted fact is therefore deemed admitted.

[21] Plaintiff again adds facts tangential to the asserted fact, but does not deny that fact. (Dkt. No. 63, at ¶ 87 [Pl.'s Rule 56.1 Resp.].) This asserted fact is therefore deemed admitted.

[22] Plaintiff denies the asserted fact, but he cites no evidence to support this denial, and his affidavit does not contradict the asserted fact. (Dkt. No. 11 [Pl.'s Aff.].) This asserted fact is therefore deemed admitted.

medical documentation from his absences between July 22, 2015, and August 5, 2015, and for his continued absence after August 5, 2015.

79. On August 11, 2015, Plaintiff provided another note from his orthopedist stating he had been out of work since July 23, 2015, and would remain out of work pending an MRI and follow-up appointment. This note did not contain any information about a specific diagnosis, prognosis, or indication of how long Plaintiff would remain out of work.[23]

80. On or about August 20, 2015, Human Resources approved Ms. Heinmiller's recommendation to terminate Plaintiff's probationary employment. He had not yet returned to work nor had he provided further medical documentation.

81. The Human Resources office sent Plaintiff a letter dated August 21, 2015, notifying him that his employment was terminated effective at midnight on August 21, 2015.[24]

**C. Parties' Briefing on Defendant's Motion for Summary Judgment**

**1. Defendant's Memorandum of Law**

Generally, in his memorandum of law, Defendant makes three arguments. (Dkt. No. 59, Attach. 2, at 12-20 [Def.'s Mem. of Law].) First, Defendant argues that Plaintiff has not sufficiently established the existence of a hostile work environment. (*Id.* at 12-14.) More specifically, Defendant argues that the few allegations of stray comments by a non-supervisory coworker about Germany, Hitler, white supremacy, and the way Plaintiff speaks were not sufficiently pervasive as to alter the terms and conditions of his employment, and were nonetheless generally not even allegedly directed at or about him (other than the comments

---

23 The Court has slightly altered this asserted fact because, although the physician's note does not contain a specific diagnosis, it does indicate that Plaintiff's continued absence was due to "ongoing back pain and radiating leg pain." (Dkt. No. 59, Attach. 28, at 2.)

24 Plaintiff's response to this asserted fact is essentially legal argument and does not contradict the asserted fact with citation to any evidence. (Dkt. No. 63, at ¶ 92 [Pl.'s Rule 56.1 Resp.].) This asserted fact is therefore deemed admitted.

about the way he speaks). (*Id.*) Defendant further argues that he cannot be held liable for any conduct by a non-supervisory coworker because there is no evidence that any supervisor was aware of that coworker's offensive remarks, and no evidence that a supervisor engaged in any harassing conduct. (*Id.*)

Second, Defendant argues that he is entitled to summary judgment on Plaintiff's discrimination claim because there is sufficient evidence that Defendant had legitimate non-discriminatory reasons for terminating Plaintiff's employment during the probationary period, including Plaintiff's frequent mistakes in performing his job despite multiple trainings and reminders and his frequent absences from work without providing appropriate notice or information. (*Id.* at 15-18.) Defendant argues that there is no evidence that these reasons were a pretext for discrimination based on Plaintiff's race or disability, particularly given that Plaintiff has not provided any concrete examples of conduct or statements to support his subjective belief that his coworker and supervisor had discriminatory intent, and he has not shown any way in which he was treated less favorably than similarly situated persons of another race or disability status. (*Id.*) Defendant also argues that there is a reasonable inference that Plaintiff's termination was not based on an improper motive given that the same supervisor who recommended his termination also hired him initially. (*Id.*)

Third, Defendant argues that there is insufficient evidence to support Plaintiff's retaliation claim given that the evidence shows that there were non-retaliatory reasons for that termination and that his supervisor was unaware about his EEO complaint at the time he was terminated. (*Id.* at 19-20.)

**2. Plaintiff's Opposition Memorandum of Law**

Generally, in his opposition memorandum of law, Plaintiff appears to argue that the fact that his employment was terminated 30 days after he made a complaint to the EEO officer indicates that the termination was the result of retaliation. (Dkt. No. 61, at 1 [Pl.'s Opp'n Mem. of Law].) He also argues that his work environment was discriminatory and/or hostile based on the fact that the personnel health nurse unreasonably felt like Plaintiff was threatening her, his coworker criticized the way he spoke and made comments "almost every day" about Germany, white supremacy, and Hitler in the workplace, and he was excluded from meetings that Ms. Heinmiller had with other MSAs, to the point where he had to call a veteran's suicide crisis hotline to cope with the stress. (*Id.* at 1-3.)

### 3. Defendant's Reply Memorandum of Law

Generally, in his reply memorandum of law, Defendant argues that the temporal proximity between Plaintiff's EEO complaint and his termination is not sufficient to establish his claim because he has not provided any evidence to rebut Ms. Heinmiller's testimony that she was unaware that Plaintiff had made such a complaint when she recommended his termination. (Dkt. No. 65, at 1 [Def.'s Reply Mem. of Law].) Defendant further argues that Plaintiff has admitted that he made mistakes and had frequent absences from work, and that he has not provided any evidence of a coworker of another race or disability status who engaged in similar conduct who was not terminated. (*Id*. at 1-2.) Finally, Defendant argues that Plaintiff has not provided any evidence to show that the conduct in his workplace was sufficiently pervasive to constitute a hostile work environment or that his supervisors were aware of the conduct underlying that claim. (*Id.* at 2.)

## II. LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[25] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).[26]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-

---

25 As a result, “[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact.” *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, “[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts.” *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

26 Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

movant is proceeding *pro se*.[255] (This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.).[27] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural rules.[28]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[29]–even where the non-movant was proceeding *pro se*.[30]

---

5

27 *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

28 *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

29 Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1(b).

30 *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[31] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III. ANALYSIS

### A. Whether Defendant Is Entitled to Summary Judgment on Plaintiff's Hostile Work Environment Discrimination Claim

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. *See, supra*, Part I.C.1 and 3 of this Decision and Order. To those reasons, the Court adds the following analysis.

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . [or] to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter,

---

31 *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

**1. Hostile Work Environment**

"To establish a hostile work environment under Title VII . . . , a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 [1993]). This standard is both subjective and objective: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile and abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321. "The incidents complained of must be more than episodic; must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321. "In determining whether a plaintiff suffered a hostile work environment, [a court] must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris*, 501 U.S. at 23).

Additionally, after a plaintiff has established that a hostile workplace existed, he must show that the harassing conduct that "created the hostile situation should be imputed to the employer." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992). "Where the hostile environment is created by a nonsupervisory coworker, the employer is liable only if it was negligent in controlling the workplace conditions." *Hoag v. Fallsburg Cent. Sch. Dist.*, 279 F. Supp. 3d 465, 480 (S.D.N.Y. 2017) (citing *Vance v. Ball State Univ.*, 570 U.S. 421 [2013]).

"The employer's vicarious liability for nonsupervisory coworkers depends on a showing that the employer knew, or reasonably should have known, about the harassment but failed to take appropriate remedial action." *Hoag*, 279 F. Supp. 3d at 480 (citing *Petrosino v. Bell Atlantic*, 385 F.3d 210, 225 [2d Cir. 2004]).

The Court need not assess whether the comments allegedly made by Plaintiff's nonsupervisory coworker could constitute conduct creating a hostile work environment because there is no evidence from which a reasonable factfinder could conclude that Defendant is liable for that employee's conduct. Specifically, Plaintiff admits that he failed to inform Ms. Heinmiller that this conduct was occurring or that he found it offensive, and he has offered no evidence to show that Ms. Heinmiller or any other relevant supervisor was aware of (or had reason to be aware of) that conduct at any relevant time. (Dkt. No. 59, Attach. 32, at 9-10 [Pl.'s Dep.] [testifying that he never reported his coworker's statements and conduct to his supervisor and he only knew two other specific employees, a social worker and a physician, who might have been aware of some of the comments].) Without such knowledge, or evidence that Defendant reasonably should have possessed such knowledge, Defendant cannot be held liable for the conduct of its nonsupervisory employees, no matter how offensive that conduct might be. *See Hoag*, 279 F. Supp. 3d at 482 ("The District cannot be held liable for a comment made by Plaintiff's coworker where Plaintiff never reported the comment to anyone at the District."). As a result, the Court finds that summary judgment is appropriate on Plaintiff's hostile work environment claim.

**2. Discriminatory Termination**

"In order to make out a prima facie case of racial discrimination in the termination of employment in violation of Title VII, a plaintiff is required to adduce some evidence that would

permit a factfinder to infer, *inter alia*, that the termination occurred under circumstances giving rise to an inference of discrimination." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 [1973]). "Once the plaintiff satisfies his initial, 'minimal,' burden, . . . the burden of proof shifts to the employer to articulate some legitimate, nondiscriminatory reason for the termination . . . supported by admissible evidence which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Patterson*, 375 F.3d at 221 (internal citations and quotation marks omitted). "If the employer carries this burden, the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 [1981]).

Here, Plaintiff has not surmounted even the first hurdle of establishing a prima facie case of discrimination because he has offered no admissible evidence that Ms. Heinmiller or the Human Resources office exhibited any conduct that could raise a reasonable inference of discriminatory intent when terminating his employment. In his deposition, Plaintiff testified that Ms. Heinmiller acted distant with him after his first two weeks of employment in that she would hardly acknowledge him in the morning despite being more friendly with other employees, she would have other employees in her office to talk with them but she never met to talk with Plaintiff, and she generally never engaged in "water fountain conversation" with him like she did with the other employees. (Dkt. No. 59, Attach. 32, at 6-7, 25-26 [Pl.'s Dep.].) He also testified that he felt he was discriminated against because, when mistakes came to light, Ms. Heinmiller assumed he was the one who made them before investigating the matter; however, he was never

disciplined for any mistakes, even mistakes that he admits making. (Dkt. No. 59, Attach. 32, at 23 [Pl.'s Dep.].) He also testified that he felt the atmosphere of the office was "racial" in a way he could not explain, but he failed to provide any elaboration or specific examples of this atmosphere. (Dkt. No. 59, Attach. 32, at 26 [Pl.'s Dep.].) In his affidavit, Plaintiff stated that Ms. Heinmiller made a statement to him during the first month of his employment that "she wished she could have interviewed [him] before [he] got the job." (Dkt. No. 11, at 6, ¶ 7 [Pl.'s Aff.].)

Although this evidence suggests that Ms. Heinmiller may not have liked Plaintiff on a personal or professional level, it does not establish even an inference that her dislike was based on Plaintiff's race or mental disability. General dislike of an employee or failure to be friendly is not actionable without evidence from which a reasonable factfinder could infer that the negative treatment was based on the plaintiff's protected characteristics. *See Zacharowicz v. Nassau Health Care Corp.*, 177 F. App'x 152, 155 (2d Cir. 2006) (affirming dismissal of claims where no reasonable jury could conclude that plaintiff's termination was motivated by discrimination rather than mere dislike caused by dysfunctional relationships plaintiff had with colleagues and complaints about the way plaintiff treated staff and patients); *Roman v. Cornell Univ.*, 53 F. Supp. 2d 223, 242 (N.D.N.Y. 1999) (McAvoy, C.J.) ("Dislike of an individual, even if that individual is a member of a protected group, without more, does not amount to prohibited discrimination."). Because Plaintiff has not provided any evidence from which a reasonable factfinder could conclude that Ms. Heinmiller's conduct towards him was based on his race or mental disability, there is also no basis to infer that Ms. Heinmiller's recommendation that his employment should be terminated was related to his race or mental disability.

Additionally, as Defendant argues, there is a reasonable inference against discriminatory intent here because Ms. Heinmiller was the supervisor who initially decided to hire Plaintiff and who ultimately made the recommendation to fire him, and his termination occurred within a relatively short time (approximately six months) after his being hired as an MSA. *See Spadaro v. McKeon*, 693 F. Supp. 2d 183, 188 (N.D.N.Y. 2010) (Kahn, J.) (noting that "the fact that McKeon is both the person responsible for hiring and firing Plaintiff, makes Plaintiff's discrimination claim unlikely," an inference that was "particularly strong given the short period, five months only, between her hiring and firing"); *Jones v. M.M.O. Music Gr.*, 08-CV-7125, 2010 WL 6210400, at *5 (S.D.N.Y. Mar. 23, 2010) (finding that the same-actor inference applied where the plaintiff was fired "only seven months" after being hired); *cf. Imperato v. Otsego Cty. Sherriff's Dept.*, 13-CV-1594, 2016 WL 1466545, at *21 n.18 (N.D.N.Y. Apr. 14, 2016) (Sannes, J.) (finding that the Court did not need to apply the same-actor inference because more than three years had elapsed between the hiring and firing). The Court notes that "[t]he same-actor inference 'is generally not a sufficient basis to grant summary judgment for the employer, . . . when the employee has proffered evidence of a pretext.'" *Trostle v. State of New York*, 13-CV-0709, 2016 WL 1175215, at *12 (N.D.N.Y. Mar. 24, 2016) (Suddaby, C.J.) (collecting cases). However, as will be discussed in the following paragraph, Plaintiff has not provided evidence that Defendant's nondiscriminatory reasons for the termination were pretextual. Thus, the same-actor inference would apply here and provides an additional or alternative basis for the Court's finding that Plaintiff has not sufficiently established an inference of discrimination to withstand Defendant's motion.

Alternatively, even if Plaintiff had provided sufficient evidence to raise an inference of discrimination, Defendant has provided ample evidence of legitimate nondiscriminatory reasons

for his termination, i.e., the evidence of needing to train him multiple times on certain aspects of his job because he made mistakes and his failure to follow the procedures for taking leave despite being reminded of those procedures on multiple occasions. Plaintiff has not adduced any evidence to show that these reasons were pretextual, and has not even denied that he made the documented mistakes or failed to follow procedures on multiple occasions. As a result, the Court finds that summary judgment is appropriate on Plaintiff's discriminatory termination claim.

**B. Whether Defendant Is Entitled to Summary Judgment on Plaintiff's Retaliation Claim**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law. *See, supra*, Part I.C.1 and 3 of this Decision and Order. To those reasons, the Court adds the following analysis.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show the following four things: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 14 (2d Cir. 2018) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 [2d Cir. 2013]). "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Summa*, 708 F.3d at 125. "If the employer demonstrates such a reason, the burden shifts back to the plaintiff to adduce evidence from which a rational finder of fact could infer 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Russell*, 753 F. App'x at 14 (quoting *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 [2d Cir. 2015]).

Here, Defendant argues that Plaintiff cannot establish even a prima facie claim of retaliation because Ms. Heinmiller was unaware that Plaintiff had made an EEO complaint at the time she recommended his termination, or indeed at any time before his termination became effective. Ms. Heinmiller stated in her affidavit that she formulated her recommendation that Plaintiff's employment be terminated on July 22, 2015, after Plaintiff was absent from work that day without contacting her. (Dkt. No. 59, Attach. 4, at ¶¶ 25-26 [Heinmiller Aff.].) She further states that she was not informed about Plaintiff's EEO complaint until September 2015, after he had already been terminated. (*Id.* at ¶¶ 31-32.) Plaintiff has offered no evidence to contradict Ms. Heinmiller's statements, but rather argues that, given the fact that he was terminated 30 days after he made his complaint to the EEO officer, "any reasonable person would feel that because of my complaint I was terminated." (Dkt. No. 61, at 2 [Pl.'s Opp'n Mem. of Law].) However, Plaintiff himself admits that he has not seen any evidence that the EEO officer contacted Ms. Heinmiller about his complaint before she made her recommendation of termination. (*Id.*)

He also points to the fact that Ms. Heinmiller completed the Douglas Factors Checklist on the same day he made his initial complaint to the EEO officer, implying that this cannot reasonably be a coincidence. (Dkt. No. 63, at ¶ 79 [Pl.'s Rule 56.1 Resp.].) However, even if this temporal proximity were sufficient to allow a reasonable factfinder to conclude that Ms. Heinmiller was aware of Plaintiff's EEO complaint (despite her explicit statement that she was not), as Ms. Heinmiller has explained, she was prompted to make her recommendation on that day specifically because Plaintiff had again been absent without leave or contact that day. Plaintiff's absence on that date (following previous failures to follow leave protocol) is a legitimate nonretaliatory reason for his termination, and Plaintiff has not provided evidence beyond temporal proximity to show that his EEO complaint was likely even a factor in his

termination, much less the but-for cause of his termination. *See Zann Kwan v. Andalex Gr., LLC*, 737 F.3d 834, 847 (2d Cir. 2013) ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage."). Indeed, the contemporaneous Reports of Contact support Defendant's proffered legitimate reasons, documenting (a) when Plaintiff was found to have committed a mistake in his work, (b) the fact that Ms. Heinmiller and/or others provided guidance to him on these occasions, and (c) when he was absent from work without prior authorization and the contacts (or lack thereof) he had with Ms. Heinmiller and others related to those absences. Because Plaintiff has not provided evidence from which a reasonable factfinder could conclude that Ms. Hienmiller was aware of Plaintiff's EEOC complaint, much less that it was the but-for cause of his termination, the Court finds that summary judgment is appropriate on Plaintiff's retaliation claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 59) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's hostile work environment, discriminatory termination, and retaliation claims are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 11) is **DISMISSED**.

Dated: March 19, 2021
Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge